## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| GEICO GENERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-cv-3407 |
| | ) | |
| SUPLICIUM TRANSPORT LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION

Plaintiff, GEICO General Insurance Company ("GEICO"), by and through its attorneys, Amundsen Davis, LLC and Dentons US LLP, and pursuant to 28 U.S.C. § 2201 and 2202, brings this Complaint for Declaratory Judgment and Rescission and states as follows:

## I. NATURE OF THE CASE

1.     This is an action for declaratory judgment and rescission with respect to a business auto liability insurance policy ("Policy") issued by GEICO to Suplicium Transport LLC ("Suplicium") for a one-year period, based on material and fraudulent misrepresentations by Suplicium that it operated one truck, one trailer, and one driver, when Suplicium actually operated a large fleet of vehicles that has resulted in more than 90 claims, none involving the single identified truck, trailer, or driver, and all for which Suplicium has failed and refused to cooperate with GEICO.

## II. PARTIES

2.     Plaintiff GEICO is a corporation existing under and by virtue of the laws of the State of Nebraska with its principal place of business in Chevy Chase, Maryland and at all times relevant was duly authorized and licensed to write policies of insurance in the State of Illinois.

3.      Defendant Suplicium, at all times relevant, was an Illinois limited liability company with its principal place of business in Springfield, Illinois.

4.      Upon information and belief, the only member of Suplicium is Jamshedjon Ismailov of Brooklyn, New York.

### III. JURISDICTION

5.      The jurisdiction of this Court is premised upon 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

### IV. VENUE

6.      Venue is premised upon 28 U.S.C. § 1391 in that Suplicium is a company that was domiciled and operated out of Springfield, Illinois and the subject Policy of insurance was issued to Suplicium in Springfield, Illinois.

### V. JUSTICIABLE CONTROVERSY

7.      An actual and justiciable controversy exists between the parties hereto concerning GEICO's right to rescind the Policy and its rights and obligations under the Policy. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

### VI. ISSUANCE OF THE GEICO POLICY

8.      GEICO issued Named Insured "Suplicium Transport LLC" Business Auto Policy No. 9300152159, which was in effect May 13, 2025 through cancellation effective July 26, 2025. A certified copy of the Policy, paginated for ease of reference, is attached as Exhibit A. A certified copy of the Policy cancellation, paginated for ease of reference, is attached as Exhibit B.

2

9.      The Policy was issued to Suplicium pursuant to an Application Form submitted by or on behalf of Suplicium and incorporated into the Policy. Ex. A, pp. 144-152.

10.     The Application Form and Policy state the address of Suplicium as 2501 Chatham Rd., Suite 100, Springfield, IL 62704. Ex. A, pp. 048, 144, 148.

11.     The Application Form identifies the business owner of Suplicium as Jamshedjon Ismailov. Ex. A, p. 149

12.     The Application Form identified one truck, one trailer, and one driver. Ex. A, pp. 148-149.

13.     The Application Form states the following for Vehicles:

### Vehicle Information

| | Vehicle 1 | Vehicle 2 | |
|---|---|---|---|
| Year | 2008 | 2025 | |
| Make | FORD | Unidentified | |
| Model | F-150 | Trailer For 21313 | |
| VIN | ...21313 | ... | |
| Vehicle Type | Pickup Truck | Trailer | |
| Registered Owner | Jamshedjon Ismailov | | |
| GVW | 6,001 - 8,000 GVW | 0 | |
| How much would this vehicle be worth without customizations or modifications? (Stated Amount*) | 0 | 0 | |
| How many miles, on average, do you drive per year? | [NOT ASKED] | [NOT ASKED] | |
| Where do you usually park your vehicle when not in use? | 2501 CHATHAM RD STE 100 SPRINGFIELD, IL 62704 | 2501 CHATHAM RD STE 100 SPRINGFIELD, IL 62704 | |
| What type of trailer hitch does the vehicle have? | None | [NOT ASKED] | |
| Is this vehicle used for the operations of the business? | [NOT ASKED] | [NOT ASKED] | |
| Is this vehicle used for the primary source of income of the business? | [NOT ASKED] | [NOT ASKED] | |

Ex. A, p. 148.

14.     The Application Form states the following for Business Owner and Driver Information:

**BUSINESS OWNER AND DRIVER INFORMATION**

| Name | Jamshedjon Ismailov | | |
|---|---|---|---|
| Is the owner a driver on the policy? | Yes | | |
| Is the owner involved in the daily operations of the business? | Yes | | |
| DOB | 31 years | | |
| Relationship to Business | Owner | | |
| Drivers License State | NY | | |
| Drivers License Number | 8844 | | |
| Does this driver need a Certificate of Responsibility or SR-22? | [NOT ANSWERED] | | |
| Does this driver have a CDL? | No | | |
| CDL Issue Date | [NOT ASKED] | | |
| Marital Status* | Single | | |

Ex. A, p. 149.

15.     The Application Form includes the following:

*Drivers Disclosure*

The insured declares that no persons other than those listed in this applicated *(sic)* are expected to operate, even occasionally, the vehicle(s) described in this application. Note: You have a continuing duty to notify the Company of any regular operator of any vehicle listed on the policy. Ex. A, p. 149.

16.     The Application Form contains the following:

**Fraud Disclosure**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. Ex. A, p. 151.

17.     The Policy was underwritten and issued based on the Application Form identifying the operation of one truck, one trailer, and one driver. Ex. A, pp. 048-050.

## VII. THE GEICO POLICY

18.     In pertinent part, the Policy provides Covered Auto Liability in the amount of $1,000,000 per accident, and Cargo Coverage in the amount of $50,000 subject to a $1,000 deductible, and includes a Form MCS-90 Endorsement. Ex. A, generally, & pp. 048-050, 132-134.

19.     The **BUSINESS AUTO COVERAGE FORM** contained in the Policy states, in part:

4

Various provisions in this Policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A.    Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |

**B.    Owned Autos**

\* \* \* \*

2.    But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire after the policy period begins will be a covered "auto" for that coverage only if:

    a.    We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

    b.    You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

3.    An "auto" that is leased or rented to you without a driver, under a written agreement for a continuous period of at least six months that requires you to provide primary insurance covering such "auto", will be considered a covered "auto" you own.

**C.    Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1.      "Trailers" with a registered Gross Vehicle Weight Rating of 3,000 pounds or less designed primarily for travel on public roads.

2.      "Mobile equipment" while being carrier or towed by a covered "auto".

3.      Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

    a.      Breakdown;

    b.      Repair;

    c.      Servicing;

    d.      "Loss"; or

    e.      Destruction

Ex. A, pp. 084-085.

20.      Item Three of the Policy Declarations describes the following "autos":

| Vehicle No. | Year, Make, Model, VIN | Garaging Zip Code | Radius of Operation | Original Cost New | Body Type |
|---|---|---|---|---|---|
| 1 | 2008, FORD, F-150, 1FTPW14V48FC21313 | 62704 | 0-500+ | | Pickup 6, 001-8,000 GVW |
| 2 | 2025, Unidentified, Trailer For 21313 | 62704 | 0-500+ | | Unidentified Trailer |

Ex. A, pp. 048-050.

21.      These are the same autos described in the Application Form submitted to GEICO by or on behalf of Suplicium. Ex. A, p. 148.

22.      At no time was any other auto added to the Policy.

### A. Covered Auto Liability Coverage

23.      Section II – Covered Autos Liability Coverage of the **BUSINESS AUTO COVERAGE FORM**, provides, in part:

**SECTION II - COVERED AUTOS LIABILITY COVERAGE**

**A.    Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an

"accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". …

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1.      Who Is An Insured**
The following are "insureds":

a.      You for any covered "auto".

b.      Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

  (1)      The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
  (2)      Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
  (3)      Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
  (4)      Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".
  (5)      A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c.      Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

Ex. A, p. 085-086.
.

7

24.    By endorsement titled "**Coverage for Vehicles Listed on the Declarations**," the

following is added to the Policy:

### THIS ENDORSEMENT APPLIES TO COVERED "AUTOS" BEING USED IN YOUR BUSINESS

When coverage is shown on the Declarations for a covered "auto" described in **ITEM THREE – Schedule of Covered Autos** on the Declarations:

a.    That auto is considered a covered "auto"'
b.    The owner of the covered "auto" is also an "insured"; and
c.    If someone other than the owner of the covered "auto" is operating the covered "auto", with your or the owner's permission, that individual is also an "insured"

if the "accident" or "loss" occurs while the covered "auto" is being used in your business.

Ex. A, p. 082.

### B. Motor Truck Cargo Coverage

25.    The Policy includes an **ILLINOIS MOTOR TRUCK CARGO COVERAGE**

**ENDORSEMENT**, which provides, in part, as follows:

Except as specifically modified by this endorsement, all provisions of the Business Auto Coverage Form apply. We agree with you that the insurance provided under your Business Auto Coverage Form is modified as follows:

**A.    Coverage**

Subject to the Limit of Liability, if you pay the premium for Motor Truck Cargo Coverage, we will pay for the direct physical "loss" to:

**1.**    "covered property" that you are legally liable to pay under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage. For this coverage to apply, the "covered property" must, at the time of "loss", be in your exclusive physical custody and control:
    **a.**    while "in due course of transit" in, on, or attached to a covered "auto"; or
    **b.**    during "loading or unloading".

**2.**    "business equipment" in your physical custody and control.

Coverage applies for "loss" to "covered property" or "business equipment" only if the loss is caused by a "covered peril".

We have the option to settle or defend any claim or lawsuit for damages covered by this endorsement. However, we have no duty to defend you against any lawsuit to which this insurance does not apply. We have no duty to settle or defend any lawsuit, or make any additional payments, after the limit of liability has been exhausted by payment of judgments or settlements.

Ex. A, pp. 136-143.

26.     Under the Cargo Coverage, "covered property" is defined as lawful products meant for sale or market of others or owned by you, while loaded for shipment in or on a "covered auto", whether or not shipped under a bill of lading or shipping receipt, except for excluded items. Ex. A, p. 142.

27.     The **ILLINOIS MOTOR TRUCK CARGO COVERAGE ENDORSEMENT** is subject to various exclusions for **Excluded Properties** (**B.1.**) including **B. Exclusions, 1. Excluded Properties, d. Property Not Under Bill of Lading** excluding coverage for any property for which no bill of lading, tariff document, rate confirmation sheet, shipping receipt, of contract of carriage has been issued and **B. Exclusions, 1. Excluded Properties, f. Storage** for any property in or on a covered "auto" after it has remained at any location for more than 72 hours. *See generally* Ex. A, pp. 136-143.

28.     Exclusions for **Excluded Perils** (**B.2.**) include **B. Exclusions, 2. Excluded Perils, e. Criminal, Fraudulent, Dishonest or Illegal Acts** for criminal, fraudulent, dishonest or illegal acts alone or in collusion with another by Suplicium Transport LLC, its partners, officers, or joint ventures, others to whom Suplicium Transport LLC entrusts the property, others who have interest in the property, or the employees or agents of any of the foregoing. *See generally* Ex. A, pp. 136-143.

29.     Exclusions for **Excluded Perils (B.2.)** also includes **B. Exclusions, 2. Excluded Perils, f. Consequential Loss** for loss or use, loss of market, loss of market value, delay or any other remote or consequential loss and **B. Exclusions, 2. Excluded Perils, h. Voluntary Parting, Failure to Deliver, Misdelivered Property, Mysterious Disappearance** for voluntary parting of property due to fraudulent scheme, trick, or false pretense, failure to deliver, misdelivered property, or mysterious or unexplained disappearance, shortage or theft. *See generally* Ex. A, pp. 136-143.

### C. Policy Conditions

30.     The **BUSINESS AUTO COVERAGE FORM** outlines certain duties required under the Policy:

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A.      Loss Conditions**

\* \* \* \*

**2.      Duties In The Event Of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this Policy unless there has been full compliance with the following duties:

**a.**      In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)**      How, when and where the "accident" or "loss" occurred;

**(2)**      The "insured's" name and address; and

**(3)**      To the extent possible, the names and addresses of any injured persons and witnesses.

**b.**      Additionally, you and any other involved "insured" must:

* * * *

**(2)**     Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit."

**(3)**     Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)**     Authorize us to obtain medical records or other pertinent information.

**(5)**     Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.**     If there is "loss" to a covered "auto" or its equipment, you must also do the following:

* * * *

**(3)**     Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)**     Agree to examinations under oath at our request and give us a signed statement of your answers.

* * * *

**B.**     **General Conditions**

* * * *

**2.**     **Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.**     This Coverage Form;

**b.**     The covered "auto";

**c.**     Your interest in the covered "auto"; or

**d.**     A claim under this Coverage Form.

Ex. A, pp. 091-092.

31.     Additional duties apply under the **ILLINOIS MOTOR TRUCK CARGO**

**COVERAGE ENDORSEMENT**:

### E.    Duties In The Event Of Accident, Claim, Suit Or Loss

The following additional duties apply under this Motor Truck Cargo Coverage endorsement:

1.    You must take all reasonable steps to protect "covered property" and "business equipment" at the time of and after a "loss" to avoid further damage.

2.    You must allow us to have all property involved in a "loss" inspected and appraised before its repair or disposal.

3.    You must give us a copy of the descriptions and schedules from all insurance policies applicable to the "covered property" or "business equipment", that was destroyed or damaged.

4.    You must send us a signed, sworn proof of loss containing all the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

5.    You and all other persons interested in the "covered property" or "business equipment" must submit to an examination under oath (EUO) when, where and as often as we may reasonably require. This includes providing a copy of all documents, forms, records, or material including but not limited to all books of accounts, uniform bills of lading, shipping receipts, invoices, and drivers' log books, whether the request is made before, during or after the EUO.

* * * *

Ex. A, p. 140.

32.    Per Endorsement titled "Business Auto Policy Amendment Changes – Business Auto Policy" (B54CW (09-23)), the Policy includes the following condition:

**Choice of Law**

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state where the vehicle is principally garaged as shown on ITEM THREE of the declarations page.

Ex. A, p. 068.

**D. MCS-90 Endorsement**

33.    The Policy includes an Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of Motor Carrier Act of 1980 FORM MCS-90 ("MSC-90 Endorsement"). Ex. A., pp. 132-134.

34.    The MCS-90 Endorsement states that this insurance is primary and that the company shall not be liable for amounts in excess of $1,000,000 for each accident. Ex. A., pp. 132-134.

35.    The MCS-90 Endorsement provides, in part, as follows:

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated here, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

* * * *

13

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

Ex. A., pp. 132-134.

## VIII. CANCELLATION OF THE GEICO POLICY

36.    No premium was ever paid by Suplicium for the Policy.

37.    The Policy was cancelled for non-payment of premium effective July 26, 2025. Ex. B, p. 028.

38.    The MCS-90 cancellation was effective August 27, 2025. Ex. B., p. 030.

## IX. UNDERLYING CLAIMS AND GEICO'S INVESTIGATION

39.    A substantial number of claims have been presented to GEICO under the Policy.

40.    As of the date of this Complaint, GEICO has opened more than 90 claims, identified by Claim Nos. 0811327250000001, *et. seq.* (collectively referred to as "Claims"). A chart identifying the Claims opened as of the date of filing this Complaint, including, if known, the date of loss, reportedly involved driver(s) and owner(s), and place of loss, is attached as Exhibit C.

41.    As of the date of this Complaint, GEICO has also received notice that a lawsuit has been filed against Suplicium in connection with one claim, Claim No. 0811327250000026, styled *Ervin Gaylord, as Administrator of the Estate of Lee Ernest Gaylord, deceased v. Ady Genik, Mantano Corporation, and Suplicium Transport LLC*, Case No. 25CV000298-200, pending in the Chowan County Superior Court, North Carolina ("026 NC Lawsuit"). The Complaint filed in the 026 NC Lawsuit is attached as Exhibit D.

42.    Additional Claims may be made against Suplicium and it is anticipated that more lawsuits may be filed against Suplicium in connection with the Claims.

14

43.    None of the reported Claims or 026 NC Lawsuit involve the truck, trailer or driver identified on the Application Form or Policy.

44.    Each of the Claims and 026 NC Lawsuit involve differing vehicles and reportedly involved drivers.

45.    In some instances, there are Claims for multiple incidents on the same day in varying states with varying vehicles and drivers.

46.    The Claims involve losses that occurred before and after the Policy was cancelled.

47.    GEICO has attempted to investigate the Claims, including attempting to contact Suplicium and its identified business owner, Jamshedjon Ismailov, to discuss the Claims.

48.    GEICO's only contact to date has been with an individual who identified himself as "Jamshedjon Ismailov", who claims that his identity was stolen, he has no knowledge of Suplicium, the Policy, and/or the Claims, and the Policy was fraudulently taken out in his name without his knowledge.

49.    This individual has refused to provide any additional information or cooperate any further with GEICO.

50.    All other efforts to contact Suplicium and/or the identified business owner Jamshedjon Ismailov have been unsuccessful.

51.    GEICO has denied coverage for any Claims that involve losses that took place after the cancellation of the Policy.

52.    By letter dated November 20, 2025, issued by email and Federal Express, GEICO advised Suplicium and Jamshedjon Ismailov that it denied coverage for the Claims under the Policy, including those that took place prior to the Policy's cancellation. The November 20, 2025 letter is attached as Exhibit E.

53.     By letter dated November 26, 2025, issued by email and Federal Express, GEICO advised Suplicium and Jamshedjon Ismailov that it denied coverage for the 026 NC Lawsuit and that GEICO will provide Suplicium and the reportedly involved driver a courtesy interim defense for the Lawsuit, without waiver as to GEICO's position that there is no coverage, including no duty to defend or indemnify, available under the Policy for the 026 NC Lawsuit. The November 26, 2025 letter is attached as Exhibit F.

## COUNT I - RESCISSION

54.     GEICO repeats and realleges paragraphs 1 through 53 above as and for this paragraph 54, as if fully set forth herein.

55.     Suplicium owed a duty to GEICO to make complete and truthful disclosures in the Application Form.

56.     GEICO reasonably relied on information provided in the Application Form when determining whether to issue the Policy to Suplicium and in determining the premiums.

57.     Section 154 of the Illinois Insurance Code provides:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance… shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written Application therefore.  No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk of the hazard assumed by the company…

215 ILCS 5/154.

58.     The Application Form completed by Suplicium included misrepresentations and/or omissions about Suplicium's vehicle(s) and operations that were material to the acceptance of the risk of the hazard assumed by GEICO when it issued the Policy.

59.     The misrepresentations and/or omissions were made with intent to deceive GEICO

by concealing the true nature of the risk for which GEICO sought insurance from GEICO.

60.     Had Suplicium provided full and accurate disclosure of information in the Application Form, GEICO would have declined to issue the Policy or declined to issue the Policy in its current form.

61.     If Suplicium had disclosed that it operated over 90 different vehicles with different drivers, the Policy would not have been issued in its current form.

62.     If Suplicium had disclosed that it operated over 90 different vehicles, the premium for the Policy would have been substantially higher.

63.     As Suplicium failed to pay any premium for the Policy, no refund of premium paid by Suplicium is owed if the Court rescinds the Policy.

WHEREFORE, for the reasons set forth above, GEICO prays that the Court enter judgment in its favor, declaring that the Policy is rescinded *ab initio* in its entirety, including any surety or other obligations under the MCS-90 Endorsement, that GEICO owes no duty to Suplicium to defend and/or indemnify it with respect to the Claims, the 026 NC Lawsuit, or any additional claims or lawsuits that may be made against Suplicium under the Policy, that no party is entitled to any right, title or interest in the Policy as a judgment creditor of Suplicium, and grant GEICO such further relief as it deems just and equitable.

## <u>COUNT II – NOTICE/COOPERATION</u>

64.     GEICO repeats and realleges paragraphs 1 through 63 above as and for this paragraph 64, as if fully set forth herein.

65.     GEICO received no notice of any of the Claims from "you," defined as Suplicium Transport LLC, or anyone on its behalf, as required by the **Duties In The Event Of Accident, Claim, Suit or Loss** condition of the Business Auto Coverage Form of the Policy.

66. Despite GEICO's attempts, it has been unable to contact Suplicium and/or the identified business owner Jamshedjon Ismailov in connection with the Claims.

67. Suplicium Transport LLC has provided GEICO with no information or documentation on any of the Claims.

68. GEICO has, to date, received no cooperation from Suplicium and/or the identified business owner Jamshedjon Ismailov in connection with its investigation of the Claims.

69. As none of the Claims involve the single truck, trailer or driver identified on the Policy, GEICO requires information regarding the relationship of the reportedly involved vehicles and drivers to Suplicium in order to assess whether the vehicles may potentially qualify as covered "autos" and whether the drivers may potentially qualify as "insureds."

70. The lack of cooperation from Suplicium is a breach of the conditions of the Policy.

71. The lack of cooperation from Suplicium and/or the identified business owner Jamshedjon Ismailov has severely impeded and prejudiced GEICO, and continues to severely impede and prejudice GEICO's ability to investigate, resolve and/or and defend the Claims.

WHEREFORE, for the reasons set forth above, GEICO prays that the Court enter judgment in its favor, declaring that there is no coverage whatsoever under Policy, including no Covered Auto Liability Coverage and/or Cargo Coverage, that GEICO has no duty to defend or indemnify Suplicium in connection with the Claims, the 026 NC Lawsuit, or any additional claims or lawsuits that may be made against Suplicium under the Policy, that no party is entitled to any right, title or interest in the Policy as a judgment creditor of Suplicium, and grant GEICO such further relief as it deems just and equitable.

## COUNT III – FRAUD & MISREPRESENTATION

72.     GEICO repeats and realleges paragraphs 1 through 71 above as and for this paragraph 72, as if fully set forth herein.

73.     Suplicium misrepresented that its operations include only one truck, one trailer, and one driver on the Application Form.

74.     Suplicium knew that its disclosure of one truck, one trailer, and one driver was false and/or made with reckless disregard for the truth.

75.     Suplicium made these misrepresentations intentionally as part of a scheme to defraud GEICO, materially impacting the risk that GEICO was undertaking to insure under the Policy.

76.     Suplicium intended for GEICO to rely upon this misrepresentation in quoting, issuing, and rating the Policy.

77.     GEICO did reasonably rely upon these misrepresentations in quoting, issuing, and rating the Policy to its detriment.

78.     By relying on these misrepresentations, GEICO issued the Policy in accordance with state and federal laws, subjecting it to a risk that is substantially more than bargained for.

79.     GEICO is now handling more than 90 claims, all involving differing vehicles and drivers, none of which are the one identified truck, trailer or driver under the Policy.

80.     GEICO would not have issued the Policy or would have issued it with significantly different terms and premium if Suplicium had disclosed the truth about its operations.

81.     The misrepresentations and omissions by Suplicium voids coverage for the Claims under the Policy.

WHEREFORE, for the reasons set forth above, GEICO prays that the Court enter judgment in its favor, declaring that the Policy is void in its entirety, including any surety or other obligations under the MCS-90 Endorsement, that GEICO has no duty to defend or indemnify Suplicium in connection with the Claims, the 026 NC Lawsuit, or any additional claims or lawsuits that may be made against Suplicium under the Policy, that no party is entitled to any right, title or interest in the Policy as a judgment creditor of Suplicium, and grant GEICO such further relief as it deems just and equitable.

## COUNT IV - NO COVERED AUTO LIABILITY COVERAGE

82.    GEICO repeats and realleges paragraphs 1 through 81 above as and for this paragraph 82, as if fully set forth herein.

83.    Under Section II – Covered Autos Liability Coverage of the Policy, GEICO agreed to pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

84.    None of the Claims involve the autos described on the Declarations as covered "autos."

85.    GEICO has been provided no information concerning the use of the vehicles reportedly involved in the Claims by or on behalf of Suplicium that could otherwise potentially qualify any of the vehicles as covered "autos."

86.    The Covered Auto Liability Coverage in the Policy includes as "insureds" Suplicium for any covered "auto," anyone else using a covered "auto" with Suplicium's permission, and anyone liable for the conduct of an "insured."

87.     None of the known drivers reportedly involved in the Claims are Jamshedjon Ismailov, the only owner and active driver disclosed on the Application Form and Policy.

88.     GEICO has no information that would otherwise qualify any of the reported drivers as "insureds."

89.     Since neither of the covered "autos" specifically listed on the Declarations were involved in the Claims, the provisions in the **Coverage for Vehicles Listed on the Declarations** potentially expanding who qualifies as an "insured" are inapplicable.

WHEREFORE, for the reasons set forth above, GEICO prays that the Court enter judgment in its favor, declaring that there is no Covered Auto Liability Coverage available under Policy, including no duty to defend or indemnify Suplicium in connection with the Claims, the 026 NC Lawsuit, or any additional claims or lawsuits that may be made against Suplicium under the Policy, that no party is entitled to any right, title or interest in the Policy as a judgment creditor of Suplicium, and grant GEICO such further relief as it deems just and equitable.

## COUNT V – NO CARGO COVERAGE

90.     GEICO repeats and realleges paragraphs 1 through 89 above as and for this paragraph 90, as if fully set forth herein.

91.     Some of the Claims involve damage, theft, disappearance, or other loss to cargo Suplicium was reportedly hauling.

92.     None of the Claims involve "covered property" that was loaded for shipment in or on a covered "auto."

93.     GEICO has no information or documentation that Suplicium is legally liable for any "covered property" under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage in connection with the Claims.

94.    Certain exclusions under the Cargo Coverage may also be applicable; however, because of Suplicium's failure and refusal to cooperate in GEICO's investigation, it lacks information necessary to determine which exclusions are potentially applicable.

WHEREFORE, for the reasons set forth above, GEICO prays that the Court enter judgment in its favor, declaring that there is no Cargo Coverage available under Policy for any Claims for cargo loss, that GEICO has no obligation to provide Cargo Coverage to Suplicium in connection with the Claims or any additional claims or lawsuits that may be made under the Policy, including no obligation to defend or indemnify any claim or lawsuit under the Cargo Coverage, and grant GEICO such further relief as it deems just and equitable.

Respectfully submitted,

GEICO General Insurance Company

By one of its attorneys:

/s/Christine V. Anto

Christine V. Anto (ARDC # 6276102)
Michelle E. Tinajero (ARDC # 6333465)
Amundsen Davis, LLC
150 North Michigan Avenue, Suite 3300
Chicago, IL  60601
Phone: (312) 894-3200
canto@amundsendavislaw.com
mtinajero@amundsendavislaw.com

Aidan M. McCormack *(Pro Hac Vice Admission Pending)*
Mark L. Deckman *(Pro Hac Vice Admission Pending)*
Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
Phone: (212) 398-8465
aidan.mccormack@dentons.com
mark.deckman@dentons.com